DANIEL SWEENEY, Respondent, v. ST. LOUIS AND SAN FRANCISCO RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, December 3, 1889.**

**Practice, Appellate.**   Instructions, not warranted by any evidence in the cause, are erroneous.

*Appeal from the St. Louis City Circuit Court.*—HON. JAS. E. WITHROW, Judge.

REVERSED.

*E. D. Kenna* and *Adiel Sherwood*, for the appellant.

The demurrer offered at the close of plaintiff's case should have been sustained, because the fact of the injury is no proof of negligence, and there was aboltely no proof that, "as plaintiff's horse and cart reached the crossing, the defendant's locomotive and cars carelessly and negligently ran into and struck plaintiff's horse and injured him," even if we admit that such an allegation is sufficient to justify the admission of evidence. *Ward v. Andrews*, 3 Mo. App. 277; *Nolan v. Shickle*, 3 Mo. App. 304 and 305; *Shultz v. Railroad*, 36 Mo. 32; *Weir v. Railroad*, 48 Mo. 558; *Calvert v. Railroad*, 34 Mo. 242; *McKissock v. Railroad*, 73 Mo. 456.   The phrase "or could by the exercise of ordinary care have discovered the danger," used by the court in the instructions given of its own motion, vitiated all of them.   Such a qualification is expressly condemned by the courts in cases of this kind.   *Rine v. Railroad*, 88 Mo. 392, 399, 400; *Yarnall v. Railroad*, 75 Mo. 583; *Milburn v. Railroad*, 21 Mo. App. 431.

*Rowe & Morris*, for the respondent.

Defendant's instruction of nonsuit was properly refused.   Persons were constantly on defendant's track

at the point where plaintiff's horse was injured, and plaintiff's boy was on the track by reason of a permission to go on the track given his employer—the Fruin-Bambrick Construction Company. Plaintiff's boy was not a trespasser. Shear. & Redf. on Negligence, sec. 493; *Scoville v. Railroad*, 81 Mo. 434; *Frick v. Railroad*, 75 Mo. 595; *Kelley v. Railroad*, 75 Mo. 138; *Eswin v. Railroad*, 96 Mo. 297; *Donohue v. Railroad*, 91 Mo. 357. What is due care, is a question for the jury. *Guenther v. Railroad*, 95 Mo. 295; *Dunkman v. Railroad*, 95 Mo. 233.

THOMPSON, J., delivered the opinion of the court.

This action was commenced before a justice of the peace to recover damages for an injury to the plaintiff's horse, which resulted in its death, and, also, for damages to the plaintiff's harness and wagon. On trial anew, in the circuit court, the plaintiff's evidence was to the effect that the plaintiff was engaged, with his horse and wagon, in hauling stone from a stone quarry, belonging to Fruin and Bambrick, and that his son, a lad fourteen years of age, was employed to drive his horse and cart; that the quarry was situated on one side of the defendant's railway, within the limits of the city of St. Louis; and that, on the day of the accident, the stone was being hauled from the quarry, across the defendant's railway, to a place where it was unloaded and broken up. The crossing was a private crossing, used only by those employed at the stone quarry. The conformation of the ground was such that from the quarry, out of which the plaintiff's son brought the stone, the road descended to one of the three railway tracks, which the defendant had there, with a steep grade,—about twenty feet in one hundred. About half past eight in the morning, the boy started from the quarry with a cart load of stone, and drove straight upon the defendant's track, without stopping, at which

point the horse was struck by an engine of the defendant, which was engaged in switching six empty cars. The boy testifies that, when he approached the track, he looked both ways, and saw nothing; also, that he heard no noise which would intimate to him that a locomotive was approaching. He did not see the locomotive, because, between him and the approaching locomotive, were some cars, loaded with rock, standing on a side track.

On the other hand, the defendant's evidence was to the effect that, immediately before the accident, the engine and the cars which it was engaged in switching were standing a short distance east of the crossing; that the fireman was engaged in putting in fuel, and the engineer was looking east for the signal to start, at the time when the train was actually started; that one of the fireman's duties was to keep a lookout when the train was moving, and that, when the train started, he looked to the west, and soon after saw the plaintiff's son, with the horse and cart, emerging upon the track, between two cars, which stood upon the side track. He shouted to the engineer to reverse the engine, and put on the brake. This was immediately done, but not soon enough to avert the disaster. The plaintiff's horse was struck by the pilot of the engine, and dragged along some distance.

There is really no conflict in the evidence on either side. The defendant's evidence, if believed, makes it very plain that the engine was stopped within the shortest possible space after discovering the horse and cart descending upon the track, and there was no contradictory evidence on this point. There was no distinct evidence on either side, as to whether the bell was being rung as soon as the train was put in motion toward the west. As the crossing was not a public crossing, there was no public statutory duty imposed on the defendant to ring the bell, under the circumstances;

and no ordinance of the city of St. Louis, within the limits of which the accident happened, was put in evidence, requiring such a precaution. The case was not tried upon the theory that the defendant's servants were negligent in failing to ring the bell, or to sound the steam whistle, so as to warn the plaintiff's son of their approach. The original petition did charge negligence in that particular. But the plaintiff was permitted to file an amended petition, which eliminated that charge, and which confined the allegation of negligence to the charge that "defendant's locomotive and cars carelessly and negligently ran into, and struck, plaintiff's horse," etc. Nor was any instruction requested by the plaintiff, which predicated a right of recovery upon the failure of the defendant's servants to give warning of the approach of the train by ringing the bell or sounding the steam whistle.

On the contrary, the instructions which were given predicated a right of recovery upon the theory of the failure of the defendant's servants to avert the danger, *after discovering* the exposed situation of the plaintiff's horse and cart, or *after they might have discovered* it, by the exercise of ordinary care.

We see no evidence on which the cause could properly have been submitted to the jury upon either of these theories. All the evidence speaking upon the question was to the effect, that the train was stopped within the shortest possible space after discovering the exposed situation of the plaintiff's horse and cart, and no attempt was made to rebut this evidence. Nor was there any evidence that, by the exercise of ordinary care, the defendant's servants on the engine or train could have seen the horse and cart sooner than they did. On the contrary, the plaintiff's evidence negatives this conclusion. It was to the effect that, although plaintiff's son looked both ways, he could see no approaching train. He could not see this train approaching from

the east, because of the intervention of some cars, on a side track, loaded with stone, although the uncontradicted testimony shows that the smoke-stack of the engine was twenty feet high. If he could not see the engine with its smoke-stack twenty feet high, although he looked in that direction, it is mathematically certain that the men in the cab of the engine could not, at the same time, have seen him.

As we see no evidence to take the case to the jury, the judgment is reversed. All the judges concur.